NEW YORK,
June and
July, 1825.

EDWARD PERKINS, Appellant,

*against*

THE WASHINGTON INSURANCE COMPANY OF THE CITY OF NEW YORK, Respondents.

Perkins
v.
Washington
Ins. Co.

Where an insurance company in the city of New York appointed R. a surveyor in Savannah, (Georgia,) and by their president, empowered him to make contracts of insurance, to take effect from the time when the premium should be paid, and *should be received at New York;* provided *the office should recognize the rate of premium, and be otherwise satisfied with the risk;* and R. advertised at Savannah, the terms on which the company would insure, and subscribed himself as agent of the company, at Savannah, mentioning that they would insure through him, &c. and P. paid the usual premium of insurance on certain goods, on the 5th January, 1820, to R. who gave P. a receipt for the money, describing himself as agent of the company, and specifying the consideration and object of the receipt; but before the premium was received at New York, the goods were consumed by fire; and P. afterwards tendered the premium to the company, and demanded that they should indemnify him or execute the contract of insurance; *held,* that they were bound to comply, though the premium had not been received by them before the loss; and that the premium being according to their established rates, it did not lie with the company arbitrarily to say they would not recognize the rate of premium, or would not be satisfied with the risk; and they were accordingly decreed to indemnify the assured.

One may become the agent of a corporation in the same manner as he may of an individual, without any deed or writing.

A mere warrant of survey given by an insurance company does not authorize the surveyor to do any act binding upon them.

Where a principal objects to the act of his agent, as unauthorized, the question is, not what power he intended to give his agent, but what power the third person who dealt with the agent, and who insists on his acts as valid, had a right to infer that he possessed, from his own acts and those of his principal. Per Colden, Senator.

A receipt for a premium of insurance, signed by the president or secretary of an insurance company, is as binding as a policy; and it is the common custom in the city of New York, to insure by receipts of this nature, signed by some officer of the company. The only difference between the effect of these, and of a policy is, that the former must be enforced in Chancery, and the latter at law. Per Colden, Senator.

It is a well settled rule in Chancery, that what one is legally bound to do, shall be considered as done, by all those having a right to claim its performance. Per Colden, Senator.

This rule applied to the case of an obligation to insure, depending on the receipt of a premium by the insurer, from his agent, whose duty it is to remit the premium presently. Per Colden, Senator.

NEW YORK,
June and
July, 1825.

Perkins
v.
Washington
Ins. Co.

When the obligation of the insurer depends on his actually receiving the premium from his agent; but the agent neglects to remit it, by reason whereof the obligation does not attach, an action lies by the insured against the agent; and the measure of damages will be the amount which was to have been insured. Per Colden, Senator.

APPEAL from the Court of Chancery. On the 9th October, 1821, the appellant filed his bill in that Court against the respondents, stating that on the 5th January, 1820, and since, the appellant being the owner of a certain stock of dry goods, groceries, &c. in a store house in the city of Savannah; applied to Henry P. Russell, of Savannah, the agent of the respondents, an incorporated insurance company in the city of New York, for insurance upon this stock; that Russell on the same 5th January, agreed that the respondents should become insurers on the stock, for one year from that day, for $5000, at a premium of 2¼ per cent, the premium to be paid on that day; and that the company should execute a policy in the usual form; that the premium was accordingly paid to Russell, with $3 50 for the expense of a survey and policy; that Russell gave a receipt for these sums, declaring the object, consideration and purpose as above set forth, and signed the receipt, "*John P. Russell, agent of said company;*" that on the morning of the 11th January, an extensive and destructive fire broke out in Savannah, and consumed the greater portion of the goods; that the appellant gave notice to Russell of the loss, offered the usual preliminary proof and demanded a policy of insurance; but Russell stated that he had not forwarded the premium to the company, and had not received a policy from them, and he intimated that the company would not consider themselves bound by what had been done; that proper notice with the usual proofs were, in May, 1820, given to the respondents in the city of New York; but they had refused to execute a policy or indemnify the appellant to the amount lost, although the appellant had, on the 28th April, 1821, tendered to their president the amount of the premium.

The bill prayed that the respondents might be decreed to pay the amount agreed to be insured, or to execute the policy, &c.

To this bill the respondents answered, admitting all the material facts charged, except Russell's agency. They denied that he was agent, or had power or authority to act for them otherwise than as a surveyor. They admitted that they had appointed him surveyor for them in Savannah, &c. of buildings insured, or in which goods offered for insurance were kept; and empowered him to state to applicants at Savannah, the probable rates, according to the nature of the risk at which insurance might be expected to be effected by them; always, however, reserving to themselves the power and control to abide by, or to vary the rates so stated by him, or entirely to decline such insurance, when the proposal for such insurance and his report or survey should be presented to them for their deliberation. That they permitted him to receive the probable premiums, and transmit them to the respondents, in order to prevent unnecessary delay in effecting insurance; but absolutely denied that they ever appointed him their agent for insuring, or effecting any insurance against loss or damage by fire.

To this answer the appellant filed a general replication; and testimony was taken on both sides, mainly to the question whether Russell was agent, as alleged in the bill, for the purpose of contracting to insure in the name of the company. The proofs need not be recited here, because they are briefly stated by the Chancellor in his reasons for the decree, and are gone very fully into by the Judges who delivered the opinion of this Court.

The cause was brought to a hearing in the Court of Chancery, on the pleadings and proofs, November 27th, 1822; and on the 28th December thereafter, the Chancellor decreed that the appellant's bill should be dismissed; for which he assigned his reasons as follows:

KENT, Chancellor. The essential point in this case is, whether Henry P. Russell was authorized to bind, and did bind, the defendants to insure the goods of the plaintiff, at

*Marginal note:* NEW YORK June and July, 1825

Perkins v. Washington Ins. Co.

NEW YORK,
June and
July, 1825.

Perkins
v.
Washington
Ins. Co.

the rate and upon the terms specified in the receipt which Russell gave to the plaintiff, on the 5th of January, 1820. The counsel for the plaintiff contends that Russell was the general agent for the defendants, at Savannah, for the purpose of receiving premiums, and agreeing to make insurances, and that they were bound by his acts. The other side insist that Russell was not their agent for that purpose: that he was only their surveyor, to survey and return a description of the property offered for insurance, to state to applicants the probable rates of insurance, and to receive from persons willing to pay, the premiums he might think fit to name, and to transmit the same to the defendants; and that they reserved to themselves a right to deliberate and act upon the application, and to accept or reject the proposal and premium in their discretion; that in receiving the money Russell acted as the agent of the applicant, and that there was no contract of insurance in any case until the proposal had been received and accepted by the defendants, accompanied with a receipt of the premium at their office.

Russell's appointment was strictly that of "Surveyor, for the defendants, of buildings and goods offered to be insured in Savannah." This appointment bore date the 11th of December, 1818. Under this appointment as surveyor, Russell, on the 18th of February, 1819, published in the papers at Savannah, that "insurances by the defendants might be effected by application to him, who had a table and classes of hazards, and rates of annual premiums, to be exhibited, and that he was authorized to say insurance would be effected as favorable to the assured as those of any company in the United States; and that he would attend to the surveying the property, and would obtain the policies from the defendants with the least possible delay." The proposals he signed as "agent for Savannah;" and he says that this advertisement he published at his own suggestion, and he does not know that it ever came to the knowledge of the defendants.

I apprehend that the defendants are not bound by any assumed power contained in these proposals, made and published without their authority. But the proposals do not, in fact, assume any authority to make contracts of insurance

NEW YORK
June and
July, 1825.

Perkins
v.
Washington
Ins. Co.

binding on the company. He was to receive applications, and through him as the medium of communication, insurances might be effected. He was authorized to say insurances would be effected on the most favorable terms; that he possessed the rates of premium, and he would attend to surveying the property and obtaining the policies. There is nothing in all this, that, upon any necessary and sound construction, carries the idea that he himself could make valid and binding contracts of insurance, in the first instance, without the subsequent sanction of the defendants. He was evidently, from his own account, to act only as a surveyor, with authority to receive and communicate applications, and to receive and communicate the answers.

He had blank printed proposals of a circular nature, and without signature issued by the company; and one of these he affixed upon his store. It was a general outline of the classes of hazards, and rates of annual premiums, and conditions of insurance. One of the conditions was, that "all applications for insurance must be made at the office of the company;" and another, "no insurance will be considered as made or binding until the premium is paid, and that every policy of insurance made by the company, shall be sealed with its seal, and signed by the president and secretary."

Hitherto we have discovered nothing that will justify the conclusion that Russell had authority to make a contract of insurance binding on the company. And if we recur to the correspondence between them, we shall equally fail in discovering the power contended for in this case.

In a letter from Russell to the defendants, dated April 9th, 1819, he observed, that, "there is a difficulty, owing to the distance from New York, in getting along with insurances here; and I have written to Mr. Swords on the subject. Unless I am furnished with blank policies ready signed, or unless my receipt for the premiums as agent is made binding on the company until the policies can be obtained from the office, I suspect but little can be done in the way of insuring, for I find that applicants want the risk to commence as soon as the premium is paid." The answer from the defendants, by Mr. Swords, their president, was dated the 27th of April, 1819, and states, that "the

NEW YORK, company had never furnished agents or surveyors with
June and blank policies. The board will never sanction it. The
July, 1825. most and best that can be done is, that all insurances that
—————— you may agree to make, and for which the premium you
Perkins shall charge, shall be actually paid, and shall be received
v. here, the office will consider as enuring at the time of the
Washington payment to you, so that in case of accident between such
Ins. Co. time of payment, and the receipt of the money here, the
company will indemnify such loss; provided, however,
that the office shall recognize the said rate of premium
which you shall charge, and shall be otherwise satisfied
with the risk. The company will in no case guaranty the
transmission of money for a premium. Insurances are effected here, only, on the actual payment of the premium to
one of its officers."

By another letter from the defendants, by their secretary,
of the date of the 28th of April, 1819, they say, "no insurance shall be binding until the premium is received at this
office. The reason of this rule is, that the company will
not be responsible for the risk of sending the premium
either by land or water. I am authorized, however, to assure you, that in all cases where the risk is accepted, on
the receipt of the premium here, they will execute the policy to take effect from the time the premium was received
by you, if the same shall be requested in the letter accompanying the survey."

By these letters the company expressly declared, that
the receipt of the premium by the company, at their office
in New York, was indispensable, and that the insurance
was to be effected there only. The company were to recognize the rate of premium, and to be satisfied with the
risk, and then, and on the receipt of the premium, the contract was to be made by them, and then it might relate
back to the date of the receipt of the premium by Russell,
if that was the pleasure of the other party. It was impossible for the company in more expressive language to have
retained in their own hands their right to bind themselves,
or more pointedly denied that right to their surveyor.

It appears by the testimony of Russell, that in several instances the rate of insurance agreed on (and conditionally of
course) by him was satisfactory to the company, and con-

firmed by them, and the policies made to bear date with the receipt of the money at Savannah. But Russell himself, evidently considered his agreement, with the applicants, as not binding on the defendants. In his letter to the company of the 18th of December, 1819, he says, "I herewith forward to you two more applications for insurance which I presume will be accepted by the company at the rates of premium which I have named, as I wish to do nothing which they will not confirm. I have fixed the premium agreeably to that established by them for buildings of this description. I forward three or four surveys. If they are received, I will thank you to inform me as soon as may be, whether the others are accepted by the company, as in that case we wish the insurances effected as soon as practicable. It will be desirable, in every instance, that policies be forwarded with as little delay as possible after the receipt of the premium."

This letter was written only a few days before the plaintiff made application to Russell, and paid the rate of premium agreed on; and I cannot perceive either in the written documents or in the usages or practice of the company, any authority in Russell to bind the defendants in a contract of insurance, before they had seen the terms, or exercised their judgment upon them, and accepted of them, and actually received the premium.

It is extremely probable that if the terms and premium had been received in this case, before notice of the fire, they would have been accepted, and the policy would have been issued. And so we may say that, in ten thousand other cases, property lost by fire might have been insured upon the usual terms, if application had been made and received in due time. The question here is, was a valid contract made by the defendants so as to fix the risk upon them from the receipt of the premium by Russell? If his agency in agreeing to the rate of insurance and receiving the premium, did not of itself, and forthwith, irrevocably bind the defendants, it is certain that they are not bound; for they did nothing afterwards in ratification of that agreement. I consider that Russell was strictly the agent of the plaintiff in receiving and undertaking to transmit the pre-

NEW YORK,
June and
July, 1825.

Perkins
v.
Washington
Ins. Co

NEW YORK,
June and
July, 1825.

Perkins
v.
Washington
Ins. Co.

mium; for the defendants had repeatedly declared that they would not consider the premium as paid until received at their office. It would be unjust, as respects the defendants, to bind them without their assent, and contrary to their declared will explicitly communicated to Russell; nor can they be fairly accused of any deception towards the public, or charged with holding out to the world that Russell was invested with absolute powers to bind them. There was nothing in all the documents or letters he possessed, to warrant such a conclusion, and if the plaintiff dealt with him in confidence that the agreement with him was binding, he did it without due examination, and at his own peril.

The only circumstance that seems to give any color to the claim, is, that the defendants in several instances allowed the policies to relate back and cover the property from the time the premium was received by Russell, so as to assume the intermediate risk. But this was in pursuance of their letters of the 27th and 28th of April, in which they promised to do it if the same should be requested, and always with a proviso, that the premium had been actually received by them, and the rates of premium approved of, and the risk abjudged to be satisfactory. The important right of the company by their board of directors to deliberate upon the terms stated, and to judge of the expediency of the risk, was always reserved; and it is a right so essential to the safety and credit of every insurance company, that we ought not to consider it as having been renounced, unless we are warranted by the clearest proof. If the company were bound definitively by the act of Russell, in this case, they were equally so in every other case, in which the premium was paid to him; and the office of insurance, upon that construction, was transferred to Savannah, and Russell substituted for the board of directors, provided for by their charter. A deduction so alarming, and so repugnant to the duty of the directors of the institution, ought to rest on positive proof, and not on presumptions raised in opposition to the declared purpose of the company.

Upon the whole, I see nothing in this case that can justify me in saying that the agreement between the plaintiff and

Russell, on the 5th of January, 1820, was an agreement to NEW YORK, which the defendants were a party, or by which they were concluded.

NEW YORK,
June and
July, 1825

Perkins
v.
Washington
Ins. Co.

If no loss had intervened, and the defendants, upon information of the survey and rates of premium and payment of the premium, had in their discretion determined that the risk was not acceptable, I apprehend they would have been deemed in the lawful exercise of a right of deliberation, and that the risk would not, and could not have been enforced against them, contrary to their will. The circumstance of a loss occurring before they had time to deliberate could not, in reason and justice, impair their rights, and make that act binding which otherwise would not have been deemed so. The interpretation of contracts, and the administration of justice, ought to rest on general and fixed principles, and not on views of temporary hardship or expediency. I am, accordingly, of opinion, that the bill ought to be dismissed.

The cause was argued, at the last session of this Court, in January, by

*D. B. Ogden,* for the appellant, and

*T. A. Emmet,* for the respondents.

Upon the single point whether Russell should be considered the legal agent of the respondents for the purpose of binding, and whether he did bind the respondents to insure. But their views are so fully incorporated in the opinions of the late Chancellor, already given, and of the Judges who delivered the opinion of this Court, that they need not be given here. In the course of the argument, *Randall* v. *Van Vechten,* (19 John. Rep. 60;) *Bank of Columbia* v. *Administrators of Patterson,* (7 Cranch, 297, 299;) and *Munn* v. *The Commission Company,* (15 John. Rep. 44,) were cited, for the *appellant,* to show that the respondents might, though a corporation, contract by an agent not appointed by their corporate seal; and *Whitehead* v. *Tuckett,* (15 East, 400,) as to the nature and effect of a general agency, was also cited for the *appellant.*

And for the respondents, 1 Mad. Ch. 325, 2 Lond. ed. and the authorities there cited, to show that if the transfer

NEW YORK,
June and
July, 1825.

Perkins
v.
Washington
Ins. Co.

of the direction of the company to an agent in Savannah was illegal, the Court would not compel a specific execution of a contract made in pursuance of such an authority: and Paley on Agency, 144, ed. by Neil Gow, to show the nature and effect of a general agency.

The Case.

WOODWORTH, J. On the 5th of January, 1830, the appellant paid to Henry P. Russell $106 25 for the purpose of insuring $5000 on his stock of dry goods and groceries, in the city of Savannah, against loss or damage by fire. Russell subscribed a receipt describing himself as agent of the respondents; and acknowledged that he had received fifty cents for the expense of the policy, and three dollars for taking the survey and transacting the business. On the 11th of January, 1820, the goods were consumed by fire. The respondents deny that, on the facts appearing in this cause, there is any liability on their part to compensate for the loss.

The material question is, whether Henry P. Russell was the agent of the respondents, and in that capacity had the authority to bind them to insure the appellant's goods? and a concise view of some of the leading facts becomes necessary, in order to arrive at a correct conclusion.

R. appointed surveyor.

On the 11th of December, 1818, the respondents appointed Russell surveyor. The power was limited to this object solely. On the 10th of February, 1819, Russell caused to be published in a newspaper printed at Savannah the proposals of the company; and added that insurance might be effected by application to him; and that he would obtain policies from the office with the least possible delay. To this notice Russell subscribed his

His acts.

name as agent for the city of Savannah. It appears by the depositions, that subsequently, and previous to the 5th of January, 1820, he agreed to insure for a number of individuals, and received the premiums, which were transmitted to the respondents; and that in every instance, save one, the company confirmed the insurance, and transmitted policies bearing date at the time the receipt was given to the applicant for insurance. It also appears, that Russell applied to the respondents for an enlargement of his

9th, 1819, to Mr. Hawes, the secretary, he observes, "There is a difficulty, owing to the distance from New York, in getting along with insurances here. Unless I am furnished with blank policies, ready signed, or unless my receipt for the premiums, as agent, is binding upon the company until the policies can be obtained from the office, I suspect but little can be done in the way of insuring; for I find that applicants want the risk to commence as soon as the premium is paid." On the 28th of April, 1819, Mr. Hawes writes in reply, that "the directors are aware of the difficulty of making insurance at a distance, and will obviate it, as far as consistent with the principle they had adopted, which was that no insurance shall be binding, until the premium is received at their office in New York." He assigned as the reason of the rule, that the company would not be responsible, "for the risk of sending the premium either by land or water;" and that in all cases when the risk is accepted, the policy is to take effect from the time when the premium was received by the agent.

On the 27th of April, 1819, Mr. Swords, president of the company, wrote to Russell as follows: "All insurances that you may agree to make, and for which such premiums as you may deem proper to charge, shall be actually paid, and shall be received here, the office will consider as enuring at the time of the payment to you; so that in case of accident between such time of payment, and the receipt of the money here, the company will indemnify such loss; provided, however, the office shall recognize the rate of premium which you shall charge, and shall be otherwise satisfied with the risk.."

After this review, we may safely dismiss the inquiry, what were the original powers conferred on the agent? It may be conceded that they were no greater than those of surveyor, strictly; and that he could not, in that capacity, bind his principal by an agreement to insure. The limited nature of such an appointment, it was soon perceived, could answer no beneficial purpose. It is to be presumed that very few, if any, would be disposed to advance the premium, and wait an indefinite period before the policy should attach. Russell communicates the difficulty to the president, who

*Margin notes:*

NEW YORK June and July, 1825.

Perkins
v.
Washington Ins. Co.

Secretary's letter.

President's letter.

R.'s original power, that of surveyor only; but enlarged afterwards.

NEW YORK,
June and
July, 1825.

Perkins
v.
Washington
Ins. Co.

When and in
what cases his
agreements
were binding.
They depend-
ed upon three
contingencies:

His agree-
ment, in this
case, was bind-
ing; all the
contingencies
upon which
the application
depended hav-
ing been com-
plied with;

is to be considered the organ of the company communica-
ting their assent to the enlarged powers of the agent; and
particularly, as it is not pretended that his letter to Russell
was unauthorized.

According to the instructions thus given to the agent,
when and in what cases were his agreements to insure bind-
ing on the respondents? Upon the payment of the premi-
um to the agent, the applicant for insurance was subject to
the following contingencies: *first*, that the premium should
be received at the office in New York; *secondly*, that the
rate of premium should be recognized at the office; and
*lastly*, that the company should be otherwise satisfied with
the risk.

As to the *first*, no doubt can arise; for it depends on the
fact whether the money has been received or tendered at
the office in New York. As to the *second*, it was undoubt-
edly intended that if the rate of premium taken by the
agent conformed to the rules and regulations of the compa-
ny, and was not less than the uniform rate before taken in
other and similar cases which had invariably received the
sanction of the respondents, the applicants would be entitled
to a policy of insurance, commencing on the day the pre-
mium was paid; for, although it is provided, that the office
shall recognize the rate of premium, it must be understood as
having referred to the rules and regulations sanctioned by
the board of directors, and the powers vested in the agent.
The right of the company to exercise their judgment
whether the agreement of the agent to insure, corresponded
with the instructions given, cannot be questioned. But
from the nature of the case it seems necessarily confined
within such limits. It cannot be urged that the company
reserved or intended to reserve the right of arbitrarily re-
fusing to subscribe a policy, when every prerequisite
which they had themselves prescribed, had been fairly and
honestly complied with. It must then be confined within
the bounds I have already traced; and if so, when the
agent presents a case, having received the premium, the
the fair implication of the proviso is, that the company
shall act upon it; and if they decline to act, or point out
any objection, the presumption is, that none exists, with-

in the true intent of the *proviso* inserted in the instruc-
tions: It is very evident to my mind, that the respond-
ents did not repose themselves on any objectionable fea-
tures in the conduct of the agent, but on an absolute right
of refusal, which they conceived was vested in them, with-
out assigning any cause. This is inferable from that part
of their answer wherein they state, "that not considering
themselves bound by any such alleged agreement for in-
surance, they did not examine into, and, therefore, neither
they nor their officers or agents did at any time object to
the sufficiency of the proofs; nor did they, in any way,
intimate or pretend that there had been any unfairness or
fraud on the part of the appellant in obtaining the insur-
ance." It is also remarkable that no suggestion is made,
that the rate of insurance was not conformable to the
general usage of the company. Can it be doubted that,
had the loss not have happened, previous to the time when
the premium was offered to be paid in the city of New
York, that this policy would have been signed as readily
as others which had been transmitted by the agent?

These remarks are equally applicable to the *third* and
*last* proviso, "that the company shall be otherwise satis-
fied with the risk." The question upon this should be
considered in the same manner, as if application had been
made for the policy before any loss sustained. What rea-
sons could have been assigned for dissatisfaction with the
risk? If any existed, it was the duty of the respondents
to point them out. Not having done so, it is not unchari-
table to suppose that they declined acting as in ordinary
cases, in consequence of the loss, erroneously supposing
that a literal adherence to the words of the instructions
would shield them against the appellant's claim to com-
pensation. It is not unnatural, in controversies between
individuals, for them, however upright, to seize on every
plank that may possibly lead to safety. Hence it comes
that no man is a proper judge in his own cause; and that
Courts are established to measure out equal and exact jus-
tice to contending parties.

The only remaining inquiry is, whether the agreement to
insure, between the appellant and Russell, the agent, was
within the instructions given by the respondents, and agree-

*Margin notes:*
NEW YORK,
June and
July, 1825.

Perkins
v.
Washington
Ins. Co.

And the agent
having con-
formed to his
instructions,
and acted a-
greeable to
their rules and
regulations.

NEW YORK, able to their rules and regulations. The insurance was at
June and 2¼ per cent. premium, on dry goods and groceries. It does
July, 1825. not appear whether the store house which contained the.
Perkins goods, was included in the first, second or third class of
v. hazards. Supposing it to have been the last, the rate of
Washington insurance on such buildings, not having goods hazardous
Ins. Co. therein, is stated at from 175 to 200 cents on the 100 dol-
lars. Goods hazardous, which includes groceries, are
charged with 12½ cents in addition to this premium. The
rate, then, paid by the appellant was equal to the highest
sum claimed by the respondents in their proposals for in-
surance. I apprehend, therefore, that there is no well
founded objection to the rate of insurance. This is evi-
dent from the acts of the respondents in uniformly accept-
ing former risks, upon contracts of insurance made on the
same, or not more favorable terms. The only risk rejected
was not on the ground that the premium was too small,
but that the application was for six months insurance and
the premium paid for that time only; whereas an insur-
ance for six months is always chargeable with three quar-
ters of a year. If, then, we look at the instructions given,
the proposals issued containing the rates of insurance, and
the acts of the respondents in reference to similar cases, the
conclusion seems to be irresistible, that the risk and rate of
premium were entirely satisfactory. The premium was
also tendered in New York and refused, which is a com-
pliance with the first part of the proviso. This, in my
view, removes every obstacle in the appellant's way.

Woodworth, J. I am of opinion that the decree of his honor the Chancel-
for reversal. lor be reversed; and that the respondents be decreed to pay
to the appellant, the amount agreed to be insured.

SAVAGE, Ch. Justice, and SUTHERLAND, Justice, con-
curred.

The question. COLDEN, Senator. The question in this case is, whether
Russell was so far the agent of the respondents, as to bind
them to an insurance for which he was paid a premium by
the appellant, on the 5th of January, 1820. For this premi-
um he then signed, as agent for the respondents, a receipt,

purporting that they should insure the appellant ; and that the insurance should take effect from the date of the receipt.

I believe it is now perfectly well settled, that a person may become the agent of a corporation, as he may of an individual, without any deed or writing.   Were it not so, there could be no safety in dealing with a corporation, unless it were with a full board of directors.   They would have all the advantages of employing agents and be under no responsibility for their acts.   The cases cited by the appellant's counsel seem to me to be conclusive on this point, and to render any further discussion or illustration of it unnecessary.

Long before the premium in question was paid to Russell, he had received from the respondents, what their president, in his letter enclosing it, called, " a warrant," under the corporate seal, whereby Russell was appointed " surveyor of *The Washington Insurance Company,* of such buildings as should be offered for insurance in the said company."

If this were the extent of the authority given by the respondents to Russell, then unquestionably no act of his would be binding on the company ; for I do not see that a survey made by him could be in any wise obligatory.

But most certainly he exercised other powers, not only with the consent and approbation of the respondents, but by the direction of their president.   These powers were such as well warranted him in assuming the title of agent, and such as leave us no reason to be surprised that the respondents should have known that he was in the habit of calling and signing himself their agent, without their objecting to his doing so until the present controversy arose. Two of the letters of Russell to the respondents, which are exhibits in the cause, are signed by him as agent.   These letters relate to premiums received and transmitted by Russell.   And the receipt of the letters and of the premiums are acknowledged in subsequent letters of the respondents.

So little were the acts of Russell directed by the power given to him by the warrant, that it is hardly necessary to refer to that instrument in the further examination of the cause.

NEW YORK,
June and
July, 1825.

Perkins
v.
Washington
Ins. Co.

One may become the agent of a corporation, the same as of an individual, without any deed or writing.

Warrant of survey.

Did not, *per se,* authorize R. to do any act binding upon the respondents.

But he exercised other powers by their consent.

NEW YORK,
June and
July, 1825.

Perkins
v.
Washington
Ins Co.

Russell was acknowledgedly not only the agent of the respondents, to make surveys, but to agree to make insur ances, to charge such premiums as he should think proper, to receive the premiums, and to remit them to the respondents at New York. That he was the agent of the respondents, for these purposes, appears from the letter of the president of the 27th of April, 1819, which is an answer to the one from Russell of the 9th of the same month applying for signed blank policies, which were refused. It is true that, by the same letter, it appears that the company intended to reserve a right to judge of the rate of premium and of the risk. I shall in the sequel advert to this part of the letter. I only refer to it at this time, to show that the respondents never intended to confine the powers of Russell to those of a surveyor, or supposed that they were limited to those conferred by the warrant.

*President's letter of April 27th, 1819.*

That Russell was the agent of the respondents to receive premiums and to transmit them to the company, not only appears from the letters already mentioned, but is acknowledged in the answer. The words of the answer to which I now refer, are as follows : " They permitted him as in their said answer afterwards particularly mentioned, to receive from such persons as were willing to pay the same to him, the sums which he might think fit to name as the probable premiums, and to transmit the same to the respondents in the city of New York, in order to prevent any unnecessary delay in effecting the insurance."

*Agency acknowledged by the answer.*

If they *permitted* Russell to receive and remit premiums, they *authorized* him to do so.

This acknowledgment of the respondents is not qualified by any subsequent part of the answer, farther than by a denial that they authorized, or intended Russell to be their agent to make insurances. But on the contrary, they aver, that they refused to give him such powers when he applied for them.

This would be conclusive against the appellant, if the points were, what powers the respondents *intended* to give to Russell. But that is not the case. The question is, what powers were the citizens of Savannah, and the appellant, as

*The question is not, merely, what powers the company intended to confer on R. but what were*

one of them, justified from the acts of Russell, and of the respondents, in presuming he possessed. It might have been very far from the intention of the respondents, to authorize their agent to bind them to an insurance at his pleasure. It might have been very imprudent in the company, to have renounced the important right of deliberating on the expediency of a risk. To keep these matters under the control of the directors, may be very essential to the credit and safety of every insurance company. In all this I entirely agree with his honor the late Chancellor. But if the directors have incautiously given to their agent, or suffered him to exercise too large a power, they must bear the consequences of their own imprudence. I am not disposed to sacrifice the just claims of one who confided in the respondents, to their safety or to the support of their credit.

I will presume that it is established, that Russell was the agent of the respondents to receive premiums, and to remit them to the company at New York. Then we are to inquire, whether the respondents were bound by the receipt as if the payment had been made to themselves.

It will not be questioned, that if the premium had been paid at the office of the company in New York, and the president or secretary had signed the receipt which was given by Russell, the insurance would have been as binding as if a policy had been executed. Receipts of this nature are in common use. Much of the insurance made in this city is done, in the first instance, by similar receipts signed by some officer of the corporation. They are intended to give immediate effect to the insurance, and supply the place of a formal policy, until one can be prepared. It has been decided that these receipts are as binding as a policy could be. In truth, the receipt answers all the use of a policy, except that the latter authorizes the assured, in case of loss, to sue in a Court of law, instead of being obliged to resort, as in this case, to a Court of Chancery.

The letter from the president of the company to Russell, which enclosed his appointment as surveyor, also covered the printed proposals of the company. From these, Russell, as he says, in his answer to the second direct interro-

NEW YORK, June and July, 1825.

Perkins v. Washington Ins. Co

the citizens of Savannah, and the appellant as one of them, authorized to consider his powers to be derived as from his acts and those of the respondents.

If the respondents have given to or suffered R. to exercise too large a power, they must bear the consequences.

Had the receipt been signed by the president or secretary, it would have been as binding as a policy; and it is a common habit in New York, to insure by receipts of this nature. The only difference between their effect, and that of a policy, is, that the former must be enforced in chancery, and the latter at law.

The printed proposals sent to R.

His advertisement at Savannah

NEW YORK,
June and
July, 1825.

Perkins
v.
Washington
Ins. Co.

gatory, framed an advertisement, which is one of the appellant's exhibits, inviting the citizens of Savannah to make insurance through him, with the respondents. To this advertisement he put the names of the president and secretary.

The respondents aver in their answer, and we must therefore believe, that this advertisement was unauthorized by them, and that they never had knowledge of it till after this controversy arose. But although they disclaim the advertisement, yet they admit in their answer that they sent the printed proposals, which are an exhibit to Russell. And he testifies that these proposals, together with the letter, which was written on the back of them, he pasted on a piece of pasteboard, and hung it in his store for the information of those who might choose to read it.

These proposals, after a preface which gives assurances of the solidity of the company, and of the fairness, candor and liberality which the directors meant to practice, proceeds to state a number of articles, for the information and government of those who meant to do business with the company. The fifth of these articles is in the following words : " No insurance is to be considered as made or binding until the premium is paid." It is to be observed that here is no intimation, as to where, or to whom the premium is to be paid. There is nothing from which those who read the proposals as they were stuck up in the office of Russell, could understand that the payment of a premium to an agent of the company authorized to receive the same, would not be as binding as if it had been paid at the office of the respondents, in New York.

I presume it will be admitted, that all persons dealing with the respondents, and who had knowledge of this article of the proposals, would be authorized to infer from it, a converse proposition, to wit, that every insurance would be considered as made and binding when the premium *was* paid.

How then does the case stand ? The appellant found Russell the agent of the respondents, to accept propositions to insure his property, and to receive payment of the premium. He also found a declaration of the respondents

which was in effect, that when the premium was paid, the insurance was to be considered as binding.

NEW YORK, June and July, 1825.

I think the appellant was authorized to conclude, when he had paid the premium to the agent of the respondents in Savannah, that the respondents were bound to make good to him any loss he might subsequently sustain.

Perkins v. Washington Ins. Co.

I cannot think that any thing was communicated to him, from which he was to understand that his property was to remain uninsured, until Russell should have collected so large an amount of premiums as he might think worth while to remit to his constituents. Russell says it was not his practice to send on these premiums immediately; that with respect to the premium in question, he pursued his usual course of waiting until he had got a considerable sum of money for the purpose of purchasing a bill of exchange to make the remittance.

In my view of the subject, it is entirely immaterial how far the respondents intended to limit the agency of Russell. If they meant that those who dealt with him should understand that he had a limited agency, it was their business to have made known the bounds which they had prescribed to him. But, on the contrary, their authority to him to receive premiums, and their notice that the payment of a premium should be binding, I think, left them without the power to disavow Russell's acts.

*If the respondents had intended a limited agency, they should have made this known.*

It appears to me, however, that the case may be put on another footing no less unfavorable to the defence of the respondents. I apprehend it is a well settled rule of the Court of Chancery, that whatever a party was under a legal obligation to perform, shall, as to all persons who had a right to claim the performance, be considered as having been performed. In other words, no person shall be allowed any advantage from his own, or his agent's laches.

*It is a well settled rule in chancery, that what one is legally bound to do, shall be considered as done, as to all those having a right to claim its performance.*

As the respondents admit Russell was authorized to receive premiums, and to remit them, it was his duty to remit the premium he received from the appellant without delay. If he had done so, the respondents must have received it before they had news of the fire, which did not happen till the 11th of January. Had the premium been duly remitted, there is no doubt but that the policy would have been made;

*This rule applied.*

NEW YORK,
June and
July, 1825.
———
· Perkins
v.
Washington
Ins. Co.

because there is no intimation on the part of the respond-ents, that there was any objection to the risk, or to the premium. I think, therefore, the Court of Chancery would have been well warranted in considering the case as if the premium had been transmitted to the respondents in due time, and had, as it must have been, received by them before they had news of the fire.

<div style="margin-note">An action would have 'lain against R. for not remit-ing in time, if the obligation ɔ insure de-ponded on this.</div>

Suppose an action had been brought against Russell for not sending the premium in due time, can there be a doubt but that the appellant would have recovered in a Court of law ; and that the measure of damages would have been the amount which was to have been insured, and for which the premium was paid. The plaintiff, in such an action, would only have had to have shown that if the premium had been duly forwarded, the risk would have been taken, and he would have had the benefit of an insurance. And so in this case, when Russell, who was the agent of the respondents to receive and remit the premium, has with- · held it, I think the respondents are to be held responsible, as they would have been, if he had performed his duty.

It will be seen, that I take but little notice of the corres-. pondence between Russell and the respondents, by which it may appear that *they intended* to limit his agency. I disregard it, because it does not appear that the appellant ever had any knowledge of this correspondence.

<div style="margin-note">R. was au-thorized to contract by the correspondence of the company with him.
His letter of April 9th, 1819.
President's answer of the 28th.</div>

But if we regard this correspondence, I confess I find myself entirely at a loss to reconcile the defence which the respondents have made in the court below, with principles of justice and equity.

In Russell's letter of the 9th April, 1819, he applies for ready signed blank policies, or to have his receipt for premiums made binding on the company, until policies could . be obtained from the office. The answer to this letter is from the president of the company, and is dated the 28th of the same month. In this answer the president, after object-ing to furnishing blank policies, " says the most and best that can be done, I think, is this, that all insurances that you may agree to make, and for which such premiums as you may think proper to charge, shall be actually paid, and recei- ved here, the office will consider as enuring at the time of

the payment to you, so that in case of accident between such time of payment, and the receipt of the money here, the company will indemnify such loss, provided, however, the office shall recognize the rate of premium which you shall charge, and shall be otherwise satisfied with the risk."

Now what is the actual state of things? Russell has agreed to make an insurance for the appellant, for which he has thought proper to charge a certain premium, which has been actually paid, and which has been *received* at the office of the respondents. I say received there, because it has been tendered to them. But an accident between the date of the receipt and the tender of the money here has happened.

What then can the defendant say, consistently with the president's letter, why they should not make a policy which shall enure at the time of the payment to Russell?

All that this letter of the president will permit them to say is, that the office did not recognize the rate of premium, and were not otherwise satisfied with the risk. But can they honestly and conscientiously say this? Was this the truth? Was it not the truth that the loss had intervened, and therefore they would not make the policy? If they may make the excuse they offer in this case, then they might have made it in every case where a loss happened between the payment of the premium to their agent, and the receipt of the money here. In other words, whenever they received an account of a loss before the premium came into their hands, however long their agent might have chosen to retain it, they would not make a policy; and so, it will be seen, that the president's undertaking that a policy should enure from the time of the payment to the agent, if we give to his letter the construction the respondents contend for, is a perfect fallacy. But the respondents should, in my opinion, be *obliged* to recognize the rate of premium which was charged and to be satisfied with the risk, unless they can show some objections to the one or the other. This they do not pretend to do. There is not the least pretence that if the loss had not

happened, they would not have taken the premium, and made the policy.

I cannot consent to suffer the respondents thus to evade the spirit of the agreement, made with their express authority by their agent.

I am sure the equity of the case is against them: and I do believe that this in an instance where law and equity coincide.

I confess, it is with much diffidence, that I dissent from the great legal authority by which the decree in this case was pronounced. Were I in a situation to ask advice, instead of being obliged to render a judgment, I might be governed by an opinion deserving such high consideration. But as it is, I am not at liberty to yield to feelings of respect; and must decide according to my own convictions.

Colden, senator, concludes that the decree should be reversed.

My opinion is, that the decree of the Chancellor should be reversed.

The Court concurring *unanimously* in the result of these opinions, it was thereupon ORDERED, ADJUDGED and DECREED, that the decree of the Court of Chancery be reversed and vacated. And it was further ORDERED, ADJUDGED and DECREED, that it be referred to one of the masters of that Court, to ascertain and report the balance justly due to the appellant in this cause, for the amount insured on the stock of dry goods and groceries, &c. belonging to the appellant, mentioned in the pleadings in this cause, and interest on the same to be calculated from the 15th day of April, 1820. And it was further ORDERED, ADJUDGED and DECREED, that upon the coming in and confirmation of the report, the respondents be decreed to pay to the solicitor of the appellant, the appellant's costs in the Court of Chancery, to be taxed, and also the balance reported to be due to him on account of said insurance and interest, together with the interest on the same from the date of the report · and that the record be remitted, &c.