JOHN MERRIMAN v. FULTON, HENSLEY & CROSS.

In a contest about the powers of an agent, the question is, not what did the
    principals intend by the appointment, but what did they actually do in the
    way of conferring authority.
When the principals placed in the hands of the agent a paper which appar-
    ently did make him their agent, and from which third persons had a right
    to infer that he was their agent, they were bound by his acts, done within
    the scope of his apparent authority, in dealing with such third person.
Where the defendants plead and set out their own letter of appointment and
    instructions, in order to plead that the lumber delivered was not of the
    quality ordered, the plaintiff need not give the letter in evidence. It is
    before the jury as a fact, and it is for them to decide whether the agent
    has exceeded his authority.
Where an express authority is conferred by an informal instrument, such as
    a letter of advice or instruction, or a loosely-drawn order, it is construed
    with more liberality than a more formal and deliberate answer.
The agent is only bound to comply substantially with his order.
    XXIX—7.

Where the instruction was not founded upon evidence, and it is altogether too favorable for the appellant, he cannot complain of it.

It is a well-settled rule of law, that the principal is bound by the act of his agent, done within the scope of his apparent authority, in dealing with innocent third persons, although such act may be in direct violation of his private instructions.

Where a new trial was asked in order to prove facts already proved, but which are immaterial to the issues upon which the verdict really rested, the new trial was properly refused. (Paschal's Dig., Art. 1470, Note 566.)

A verdict should not be disturbed to give an opportunity of letting in light testimony, which is not likely to produce a different result, especially when witnesses have been examined to the same point.

Where the case made by the evidence is consistent with the petition, the defendants have no right to complain that the evidence is stronger against them than they expected.

APPEAL from Calhoun. The case was tried before Hon. FIELDING JONES, one of the district judges.

Fulton, Hensley & Cross, being merchants at Lavaca, Texas, addressed the following letter to A. W. Canfield:

LAVACA, *September* 25, 1858.

"Capt. A. W. CANFIELD.        •

"DEAR SIR: Below please find memorandum of cypress lumber for schooner Diamond, which please have filled to the letter.

"5,000 feet ¾-inch cypress, 14, 16, 18, and 20 feet long and very wide.

"10,000 feet 1-inch, from 12 to 24 feet long and all wide, some to be 2 feet wide.

"7,500 feet 1¼-inch, very wide, some to be 2 feet wide.

"7,500 feet 1½-inch, very wide, some to be 2 feet wide.

"5,000 feet 2-inch, very wide, some to be 2 feet wide.

"300 first quality cypress posts, 4 x 5, 13 feet long, and make balance of cargo of heart cypress shingles.

"We want the best quality of cypress lumber, and are not willing to take or pay for any other, and please instruct your friend Russell to get the best, and oblige yours, very truly,        FULTON, HENSLEY & CROSS."

Canfield delivered this letter to R. B. Russell, of Orange,

Texas, it being understood that the lumber was to be obtained at Sabine city, and brought to Lavaca on Canfield's schooner, Diamond. Russell exhibited the letter to, and left a copy with, Merriman, the lumber-man, who filled the order by delivering to Russell the quantity of lumber, for which Russell receipted, "for Fulton, Hensley & Cross." The bargain was at $20 per thousand.

When Canfield's schooner delivered the lumber at Lavaca, Fulton, Hensley & Cross objected, that the lumber did not correspond to that ordered, and, after having ordered it landed at Forbes & McKee's wharf, and sold some of it, they refused to receive it. The sale was before they had examined it, and they refused to receive payment. Canfield called a "board of survey," on 22d November, 1858, and, after inspection, the board decided that the lumber did not correspond to the order. And thereupon the lumber was left on Forbes & McKee's wharf without a claimant, and they disposed of it for the benefit of whomsoever it might concern, and retained the money.

Merriman sued Fulton, Hensley & Cross for the invoice value of his lumber. They denied the purchase; denied the authority of Russell; insisted that they dealt with Canfield only, and plead the inferior quality and exact difference of the lumber as an excuse for not receiving it. They also plead that the lumber was not consigned to them, but to another firm. There were immaterial exceptions to the petition, which was a good *quantum meruit* count. One of the exceptions was to allowing an amendment, so as to cure a variance of date *after* demurrer.

Although the defendants plead their letter as a justification, and to show the difference between the lumber ordered and the invoice, yet when the plaintiff offered it in evidence, they objected to it on the ground of its immateriality, and, the objection being overruled, they saved the exception.

The plaintiff proved this letter. Canfield swore that he

solicited the order and obtained it, so as to have return freight for his schooner; that he sent it to Russell to have the order filled at the mill of the plaintiff, on the Sabine river, and the lumber was returned as freight on the Diamond; that witness recommended Russell; that the lumber was received and freighted on the Diamond, and the cargo partly lost by stress of weather; that the defendants ordered the lumber to be landed on Forbes' wharf; after the landing, the witness claimed a contribution of the defendants, as average for damage to his vessel; Cross refused to have anything more to do with the lumber, and witness afterwards abandoned his claim for average; it had been agreed that the Diamond should receive $10 per thousand for freights. All the lumber was good except a few of the fence posts, and very little other; the lumber was shipped to Canfield & Pendexter. The survey was proved. The captain of the Diamond swore that he received the lumber on his vessel; it was of excellent quality, except a few of the fence posts; some so wide that it would not go in the hatches, and it was stored on deck, from which it was lost by stress of weather. The lumber was landed on the wharf of Forbes, by the instructions of the defendants, because their wharf was broken down. The defendants did not see the lumber until after it was landed.

Russell proved his agency; his order to the mill; his receipt of the lumber " on account of defendants," and explained the inferiority of the fence-posts; all he did he swore was for the defendants; that he contracted for $20 a thousand, and it was worth it. His whole agency was founded on the letter to Canfield, and the witness acted under his construction of the power. The lighter-man proved that the lumber was No. 1. A witness proved that Forbes & McKee bought of the defendants some five thousand feet of the lumber, which was excellent; that the defendants afterwards rejected payment for it, refused to render an account to Forbes & McKee, and Forbes &

McKee sold it on account of whoever it concerned, and held the proceeds. The survey was proved, and one of the board believed the facts to be as stated. The defendants offered proof to show that in dealing the plaintiff and lighter-man, Russell, disclosed no agency, but seemed to be acting for himself. Russell, in rebuttal, denied this conversation, and his receipt to Merriman for the lumber proved the contrary.

So that the whole case rested upon the authority given by the letter, and upon the narrow difference in the quality of the lumber, as a reason for refusing to receive it, or rather rejecting it, after it had arrived and some acts of ownership had been exercised over it by the defendants.

The jury returned a verdict for the plaintiff for $583 48, for which there was judgment; this was $80 less than the price charged.

There was a motion for a new trial, founded on affidavits noticed in the opinion; but the facts offered were rather cumulative than going to disprove the case made upon the agency, the delivery of the lumber upon the Diamond, and the liability of the defendants to the plaintiff then and there. As the opinion mainly turned upon the instructions of the court, and the chief justice has nicely drawn the distinctions on the law of agency, the instructions are here given in full.

"I charge you, that if you believe from the evidence that the defendants transmitted by Canfield to Russell an order for lumber to be purchased by him for defendants, at plaintiff's mill, it would constitute him, Russell, the agent of the defendants, so far as he acted in purchasing the lumber of the quality and description contained in the order or bill furnished by the defendants; and when the lumber was so delivered to and received by Russell, the defendants would be liable to the plaintiff for the value of the lumber, as agreed on at the place where it was delivered to Russell, and you should so find. And I

charge you, that if you believe that the quality and description of the lumber received was such as the order described, the defendants would be liable for it, although the quantity may have been in some instances less or more, unless you believe that the defendant ordered the lumber for some specific object, and not for sale generally.

"But I charge you, that the defendants would not be liable for any amount of inferior lumber which was not called for in the order.

"I further charge you, that if you believe either Canfield or Russell received lumber of the quality and description contained in the order given by defendants to Canfield, and had the same put on board the schooner "Diamond" for defendants, and afterwards, by stress of weather, a part of it was lost, the defendants would still be liable to pay for it, although it may have been lost.

"But if you believe that Canfield, by the understanding between him and the defendants, was to procure the lumber on his own account, and ship at his own risk to Lavaca, and then to deliver to defendants, then I charge you, that the defendants would not be liable to plaintiff, unless you are satisfied the defendants received it.

"If you find for the plaintiff, you should find the value of lumber at the place where it was delivered.

"If you find for the defendants, you should simply say so."

No brief for the appellant has been furnished to the *Reporter.*

*D. V. Crosland,* for appellee.

COKE, J.—It is deemed necessary to consider only three of the assignments of error:

1. That the court erred in admitting as evidence the order from Fulton, Hensley & Cross to A. W. Canfield.

2. That the court erred in instructing the jury.

3. That the court erred in overruling the motion for a new trial.

The first assignment is not well taken. The order referred to reads as follows:

"LAVACA, *September* 25, 1858.

" Capt. A. W. CANFIELD.

"DEAR SIR: Below please find memorandum of cypress lumber for schooner Diamond, which please have filled to the letter. [Here follows description of the lumber.] We want the best quality of cypress lumber, and are not willing to take or pay for any other; and please instruct your friend Russell to get the best.

"FULTON, HENSLEY & CROSS."

The admission of this order was objected to on the ground, as appears from the bill of exceptions, that it was irrelevant, and because the bill of lumber set out in the petition—the price of which is sued for in this action—is not the same authorized by this order to be purchased, in quantity or description. The only point in this case over which there is any contest is as to the authority of Russell to bind the appellants by a purchase of the lumber described in plaintiff's petition. It is quite too plain for serious argument, that this order is not obnoxious to the objection of irrelevancy to that issue. It first instructs Canfield to have the bill filled, and then requests him to instruct Russell to fill it with the "best."

So far from being irrelevant, it would seem to leave no doubt of Russell's agency and authority. The question is not what the appellants intended to do by this order, but what they have done. They may not have intended to make Russell their agent. But when they placed in his hands a paper which apparently did make him their agent, and from which third persons had a right to infer that he was their agent, they are bound by his acts, done within the scope of his apparent authority, in dealing with such third person. (Story on Agency, § 73; Paley on Agency,

189–197, 199; 4 Cow., 659; Williams v. Walker, 2 Sandf., Ch., 325.)

The other objection is equally untenable. Whether the lumber described in the petition, alleged to have been purchased by Russell by authority of this order, corresponds to that required by the order to be purchased, is a question for the determination of the jury, under the instructions of the court. The objection goes to the weight, and not to the admissibility, of the evidence.

This order was set out *verbatim* in appellant's answer. Its execution and transmission were admitted by them. It was entirely unnecessary for the appellee to introduce it.

The second assignment is not well taken. The jury were instructed substantially, if they believe from the evidence that the appellants did transmit to Russell by Canfield an order to make a purchase of a bill of lumber, that Russell was thereby constituted their agent for the purchase of such lumber as was described in the order; and that if Russell did purchase and receive from appellee for the appellants such a bill of lumber, to find for the appellee the price which Russell agreed should be paid for it; and that if the quality and description of the lumber purchased was such as is described in the order, the appellants would be liable, although the quantity might, in some instances, be more or less; unless the jury believe from the evidence that the appellants ordered it for some specific purpose, and not for sale generally. There is no error in this instruction that we can perceive, when considered with reference to the facts of this case.

The authority to Russell is special and limited, and must be construed, as to its nature and extent, according to the force of the terms used and the objects to be accomplished. Nor can an authority be implied where there exists an express one. But it is believed to be a general rule, that where an express authority is conferred by an informal instrument, such as a letter of advice or instruction, or a

loosely-drawn order, it is construed with more liberality
than a more formal and deliberate instrument. This rule
has its foundation in the convenience and the necessities
of a commercial community, and would seem indispensa-
ble to general confidence and security in the ordinary ope-
rations of trade and commerce. (Story on Agency, §§ 82,
83, 75.) While under a narrow and technical construction
of the order in question, the correctness of that portion of
the charge which holds the appellants liable for the excess
of the lumber purchased over the exact quantity ordered,
might not be free from doubt, we are of opinion that the
court very properly applied the more liberal and just rule
of construction, which looks to a substantial rather than a
literal compliance on the part of the agent with the terms
of his authority. The difference between the bill of lum-
ber ordered and that purchased is very slight considering
the quantity. It was possibly difficult, if not impracticable,
to get the exact amount ordered. To fill the order sub-
stantially, as near as practicable, was clearly within the
scope of the agent's authority, and this portion of the
charge of the court, in effect, so instructs the jury.

In the succeeding clause of the charge, the jury were
instructed, if they believed from the evidence that, by the
terms of the understanding between appellants and Can-
field, the latter was to buy the lumber, and ship it at his
own risk to Lavaca, &c., to find for the appellants. There
is manifest error in this proposition, considered with refer-
ence to the facts of this case, but the error is in favor of
the appellants. There is not a particle of proof in the
record, tending to show that the appellee, Merriman, had
notice of any such understanding, or that he knew anything
more of Canfield's or Russell's authority than is to be de-
rived from the appellant's written instructions, a copy of
which was given him by Russell. By this instrument, the
agent was clothed, apparently, with full authority to act in
the matter. Under these circumstances, it is a well-settled

rule of law, that the principal is bound by the act of his agent, done within the scope of his apparent authority, in dealing with innocent third persons, although such act may be in direct violation of his private instructions. (4 Barb., 373; 4 Cow., 645; 1 Hill, 501; Story on Agen., §§ 130, 131.) This principle of law is ignored in the charge of the court; not however to the detriment of the parties complaining here.

We are of the opinion, that the third assignment of error is not sustained by the record. There was no error in the refusal of the court to grant a new trial. While there was some conflict of testimony in regard to the quality of lumber shipped on the schooner Diamond, and some circumstances tending somewhat towards proving that the appellants may have understood that Canfield was to buy and bring the lumber to Lavaca at his own risk and deliver it to them, the clear weight of the whole testimony strongly supports the verdict of the jury. The affidavit of appellant's attorney discloses no ground for setting aside the verdict and granting a new trial. It may be admitted that the lumber was shipped to Pendexter & Co. and not to appellants, and still the verdict is abundantly supported by the testimony. The witness, Canfield, introduced by the appellee, upon whose testimony the verdict is mainly founded, testified to the same fact, which it is alleged this bill of lading will prove. There is no doubt but that, if introduced, this bill of lading would have been a circumstance in appellant's favor, but not a weighty one, because not inconsistent with the truth of the testimony introduced by his adversary. The question now is, would this testimony be likely to change the result on another trial? We think not. A verdict should not be disturbed to give an opportunity of letting in light testimony, which is not likely to produce a different result, especially when witnesses have been examined to the same point. (3 Gr. & Wat. on New Trials, 1042; Glover v. Wolsey, Dud., 85.)

It is not necessary to consider the question whether, if the testimony were ample for the purpose, the affidavit of appellant's counsel shows such merit as in other respects brings his clients within the rule entitling them to a new trial.

The other point made by this affidavit, and assigned in the motion, that appellants were surprised by the testimony of Captain Wayne, one of appellee's witnesses, most clearly does not entitle them to a new trial. Why they were surprised is not explained. There is nothing in the record to show that the appellants have any reason to complain of the evidence offered by the appellee. (3 Gr. & Wat., 968, 969.)

The appellant's petition was ample notice that evidence like that mentioned in the affidavit would be introduced on the trial. It would be giving a party too great an advantage to permit him to take the chance of a verdict, and, when it is lost, to relieve him from the verdict, and give him a chance with another jury, merely because the evidence was stronger on the first trial than he expected it would be. (Burr v. Palmer, 23 Vt., 254; Norwich and Worcester Railroad Company v. Cahill, 18 Conn., 484.)

There is no error in the judgment, and it is

AFFIRMED.