### A. B. STROZIER v. GUS LEWEY & CO.

#### (No. 2250.)

APPEAL from Galveston County.   Opinion by WHITE, P. J.

DAVIDSON & MINOR, counsel for appellant.

SCOTT & LEVI, counsel for appellees.

§ 129. *Conflict of evidence; general rule as to, on appeal, does not apply where evidence is documentary; case stated.*   This suit was originally brought by appellees against appellant in justice's court upon an open account for $146.20.   Appellees recovered judgment, and appellant appealed to the county court where the case was tried *de novo* by the judge without a jury, and judgment was rendered for appellees for the debt sued for and costs.   The principle matter of contention between the parties was the value of a barrel of "Mary Anderson" whisky for which appellees claimed the right to recover because the same had been sold and delivered by them to appellant, in pursuance of the following order:

"WILLIS, TEX., March 20, 1884.
"*Messrs. Gus Lewey & Co., Galveston:*
"GENTS.— Please ship the following articles, on ninety days, payable at Galveston, Texas, with interest from respective due dates at ten per cent. per annum until paid, you not being responsible for perishable goods, leakage, breakage or shortage after obtaining a bill of lading in good order.   It is further acknowledged that

all goods purchased by —— from you, heretofore or here-
after, are payable at Galveston.

· "Marks — A. B. Strozier, Willis, Texas,

500 Dash. cigars...........................$32.50 (per thousand)
1 Bbl. Mary A.............................. 2.50 (per gallon)
1 Cuckoo clock..............................gratis.

"A. B. STROZIER." (Tr. p. 1.)

For the cigars Strozier paid at the maturity of the
bill, but for the barrel of "Mary Anderson" whisky he
refused to pay; and he defends this suit on the ground
that under the contract of purchase entered into by
himself with the agent of appellees he was to buy a
barrel of "Mary Anderson" whisky from appellees at
twenty-five cents per gallon more than the cost per
gallon of the "Callaghan" whisky, the price of which
was $2.25 per gallon, and a sample of which was, at
the time of the purchase, shown by him to appellee's
agent; that this agent, before and at the time of the
purchase of the "Mary Anderson" whisky, and in con-
sideration of such purchase, made a special agreement
that appellant should have the right to return it to ap-
pellees if it was either not equal to the "Callaghan"
or was not satisfactory to him; that this special agree-
ment on the part of appellees was the sole condition
upon which he agreed to buy the whisky, and constituted
to him the sole inducement and consideration for giving
the written order; that this special agreement was a part
of the contract of purchase, made at the same time with
the written order, but not reduced to writing; that as
soon as he received the whisky and ascertained by the
usual tests that it was not equal to the "Callaghan," and
not satisfactory to him, he notified appellees that he held
it subject to their order; and that upon the failure of ap-
pellees to instruct him how to dispose of the whisky he
returned it to them, having retained it no longer than
was necessary in order to test its quality, and having ex-
ercised no acts of ownership over it. All the testimony
in the case was by deposition, except that of Lewey, who

testified orally in court on the trial. He knew nothing about the transaction further than was disclosed by the above written order. He testified as to the quality and value of the "Mary Anderson" whisky, and that drummers are agents to solicit orders, and that the custom of Galveston is, that such orders as are sent on by drummers are subject to the approval, acceptance or rejection of the principal. In other words, that drummers could not make any positive and complete contract, so as to bind the principal. The other testimony adduced by appellees was that of Pandres, their drummer, who testified by deposition. Appellant's testimony consisted of his own, and the depositons of Richards, a lawyer, and Golding, appellant's bar-tender. There was a direct and positive conflict between the testimony of Pandres and the last named three witnesses as to the special verbal contract pleaded by appellant. Substantially the testimony of appellant's said three witnesses was, that the quality of the whisky ordered was simply that it was to be equal to the "Callaghan" — that Pandres agreed that it should be equal to the "Callaghan," and told appellant if he would order a barrel of "Mary Anderson" whisky, and it did not suit him he could ship it back to the firm. Pandres denied that there was any such special contract, but that said written order contained the entire contract. Appellant's testimony also proved that the "Mary Anderson" which he received from appellees was of inferior quality to the "Callaghan," and wholly failed to come up to the standard claimed for it by Pandres. Also, that as soon as practicable after appellant found that said whisky was not equal to what it was represented to be by Pandres, and not such as he had contracted to take, he notified appellees that he would not receive and pay for it, and that it was subject to their order, and shortly thereafter he reshipped it to their order. The trial judge, in his conclusions of fact, found that the order contained the contract, and that there was no special contract such as was claimed by appellant.

He admits that with regard to this special contract there is a conflict of evidence. *Held:* It is a general rule of practice, well settled, that where there is a conflict of evidence, but there is sufficient to sustain the judgment, the appellate court will not set it aside. [W. & W. Con. Rep. §§ 46, 99, 634, 712, 839, 924, 1029.] This rule is based upon the consideration that the trial judge is in a much better attitude to judge of and pass upon the witnesses, from their means of knowledge, manner of testifying, and all the circumstances connected with their testimony, than an appellate court could possibly be, with only the testimony as it appears in the record. But this general rule is not without an exception, and the exception is, where the evidence before the trial court is wholly by deposition. In such case the reason of the general rule fails, because the written testimony can be weighed and passed upon as intelligibly by the appellate as by the trial court; neither court having the aid of those usual *criteria* above mentioned by which to judge of oral testimony. This subject is discussed at some length by Watts, J., in the case of Henderson v. Jones, 1 Tex. Law Review, p. 336, and he cites Carver v. Louthaine, 38 Ind. 544, in support of his position, and says: "Obviously, in such case, the reason of the rule, and according to one of the ancient maxims of the law, the rule itself, should be considered inoperative;" and his conclusion is, that "in this class of cases it seems that the revising court ought to relax the stringent rule applied in other cases, and with greater liberality look to and analyze the evidence upon which the finding in the lower court is based." Looking to and analyzing the testimony,— the depositions,— in this case, our judgment and conclusion as to the weight and credibility thereof, do not coincide with the finding of the learned trial judge. To our minds the preponderance of the evidence is decidedly in favor of appellant as to the special parol contract, as pleaded by him. Such contract is positively and emphatically deposed to by three witnesses. It is a case of three unim-

peached witnesses against one, with the probabilities of truth certainly as strongly developed on the part of the three, as on the part of the one. If there is any inherent virtue or peculiar credibility attaching to the testimony of the drummer Pandres, which would entitle it to outweigh the testimony of the other three witnesses, one of whom seems to be wholly disinterested, we are unable to perceive it. Besides the testimony of the witnesses, appellees read in evidence certain letters written to them by appellant, in which appellant insisted upon the special contract made with Pandres, etc. These letters strongly corroborate appellant's testimony that there was such a special contract between him and Pandres. We hold that the court erred in its conclusion of fact, that there was no special verbal contract as alleged by appellant.

§ **130.** *Custom of merchants; cannot affect parties having no knowledge thereof.* The trial judge found also, that the universal custom among merchants in Galveston is, that drummers are only empowered to solicit orders, and are not authorized to consummate sales of goods. *Held,* although such may be the custom, to be binding upon parties trading with such drummers, it must be known to and recognized by such parties. It was not shown that appellant had any knowledge of such custom.

§ **131.** *Principal bound by acts, etc., of agent.* It is a well settled rule of law that the principal is bound by the act, declaration or promise of his agent, done and made within the scope of such agent's apparent authority in dealing with innocent third persons, although such act, declaration or promise, may be in direct violation of the agent's private instructions. [2 W. Con. Rep. §§ 545, 727; Merriman v. Fulton, Hensley & Cross, 29 Tex. 97; Caley v. R. R. Co. 89 Pa. St. 364.]

February 27, 1886.                    Reversed and remanded.