THE BANK OF LYONS *vs.* DEMMON and another.

Where a person bought of a bank some of its own stock, for which he gave his note at the par value of the stock (though then greatly depreciated), having been solicited to make the purchase by the president and cashier with a view to his becoming a director of the bank, with an understanding that he could return the stock and take up his note whenever he desired to do so; *held*, that this understanding constituted a good defence to an action on the note, the stock having been received back by the bank, through the agency of its cashier.

The agreement by the bank, that the note might be taken up at any time on return of the stock, was void, as varying the terms of a written instrument by a prior or cotemporaneous parol agreement; but this agreement operated as an accord and satisfaction after the bank had taken back the stock in payment of the note and in accordance with the terms of the agreement.

Evidence of a prior or cotemporaneous parol agreement to take up a promissory note will not be received to vary the terms of the note; but such an agreement, when followed by a complete execution and performance, constitutes a good defence to an action on the note.

A corporation may act by its authorized agents, and is bound by their acts as is an individual by the acts of his agents.

No formal resolution of the board of directors of a bank is required to appoint an agent or define his powers.

A contract may be implied against a corporation, and it may affirm the acts of an assumed agent and thus be bound by them.

Substantially the same rules apply to the acts and engagements, and the proof thereof, of a corporation within its corporate powers, as apply to those, and the proof thereof, of an individual.

ACTION of assumpsit tried at the Wayne circuit, August, 1843, before Mosely, C. judge. The declaration was upon a note for $1,000.00, signed by Joseph M. Demmon and indorsed by Charles Demmon. The defendants pleaded the general issue, and certain matter stated in the opinion of the court was set up under a notice. The making and indorsement of the note were admitted, and also protest and notice of non-payment. Evidence of an exemplification of a decree in chancery, appointing Thereon R. Strong receiver of the Bank of Lyons, and of an assignment pursuant to the decree, was received. The defendants' counsel moved for a non-suit on the ground that the suit should have been brought

in the name of the receiver. Motion overruled. The defendants' counsel offered to prove the facts set forth in the opinion, and called Newell Taft for that purpose, which was objected to by the counsel for plaintiff, and objection sustained by the circuit judge. Thaddeus W. Patchin, being called by the defendants, testified that he was cashier of the Bank of Lyons at the date of the note in suit; that the consideration of it was some stock transfered or issued to Joseph M. Demmon; that this note was a renewal of a former note, the old scrip for which had been canceled; that no money was at any time drawn from the bank on the note. That the defendant Joseph M. Demmon frequently talked of having the stock he held surrendered, and having the note surrendered. This last statement was objected to by the plaintiff's counsel, but the court overruled the objection and the plaintiff's counsel excepted. The witness further stated that the payment of the note in stock was in pursuance of a previous arrangement, and he took the note, pinned it to the stock, and told the clerk to cancel it and hand it to M. Demmon. Witness considered the note paid. The amount of stock delivered in payment of the note was ten shares of a hundred dollars each. Further evidence tending to the same point as the above was given, but as reference is made to it in the opinion, no more extended statement is here required.

The judge charged the jury that, although the action was in form between the original parties, it must be regarded as brought by the creditors and stockholders, and that, being virtually between the creditors and stockholders and the defendants, they had a right to recover. That in regard to the agreement the question was, whether the bank had a right to make such an agreement to take the stock in payment of the note. They had not. There was a want of power. The arrangement was inhibited by the statute regulating corporations, and if they had not the power, the taking of the stock by the cashier was not a satisfaction of the note. That the arrangement and acceptance of the stock by the cashier was not an accord and satisfaction. Defendants' counsel excepted. Verdict for the plaintiff of

eight hundred and seventy-five dollars and twenty-one cents. Defendants moved for a new trial on a case made.

*W. H. Seward,* for defendants, argued that the learned judge erred in his charge as above given, and in the rejection and admission of the testimony alluded to in the decision.

*W. H. Adams,* for plaintiff.

I. The suit was properly brought in the name of the bank. II. Parol evidence of an agreement such as is claimed by the defendants to have been made when the note was given is inadmissible. Such evidence admitted is not entitled to any weight. 1st. It would qualify and contradict the note and control its legal effect and operation, and a written instrument can not be thus affected by parol evidence of stipulations agreed upon at or prior to its execution. 2d. Such an agreement of the president and cashier would be void, not being authorized by a resolution of the board of directors. III. The agreement is void. 1st. For want of consideration. 2d. For want of the presence of seven directors at the meeting when it was made, exclusive of the maker of the note who could not act upon the question or be counted for the purpose of a quorum upon that question. 3d. Because the obvious design and effect of it was to defraud the bank and the public by holding out false appearances, giving a fictitious value to the stock, securing to the maker all the benefit which might arise from his holding the stock by rise in value or otherwise, and at the same time enabling him to cast any loss which might occur on the bank. 4th. The note being a substitute for the stock, it was part of the capital of the bank, and the agreement is in violation of the statute making it unlawful for directors of a moneyed corporation to divide, withdraw or in any manner to pay to the stockholders any part of the capital stock, &c. 5th. The agreement is in violation of the statute forbidding the discount of a note to pay for stock, or withdraw money paid for stock, and of the provisions rendering it unlawful for the corporation to ap-

ply any portion of its funds to purchase its own stock or receive any shares in payment or satisfaction of a debt. 6th. · The agreement is within the provision of the statute rendering invalid any payment made, judgment suffered or lien created, or security given by any corporation when insolvent or in contemplation of insolvency. IV.· The several decisions excluding proof contradicting the record of the proceedings of the directors, April 27th, 1840, were correct. V. The cashier had no authority to receive stock in payment of a note. VI. The bank could not hold stock in the name of any of its officers or other persons as trustees. The law does not allow of any such trust. VII. The receiver of the plaintiffs is a trustee for the creditors of the bank, and may therefore take advantage of any thing that creditors may to impeach or set aside any act of the bank.

*By the Court*, BEARDSLEY, J. This suit was well brought in the name of the Bank of Lyons, although its property and effects had been previously transfered to a receiver. The corporation was still in being, and although the action might have been brought in the name of the receiver it was equally proper in the corporate name. Each would prosecute with the same right, and whatever would be a defence against one would be so as to the other. And as to the defence set up in this case, if it was originally available against the bank, it is now equally effective against the receiver. His rights are precisely those of the bank, if it had continued its appropriate business and no receiver had ever been appointed. The receiver has not the rights of a bona fide purchaser of this note: as to this defence he stands precisely in the original place and position of the bank. (9 Paige, 410.)

The action is founded on a note bearing date the 27th of April, 1840, for one thousand dollars with interest, payable three years from date. It was signed by the defendant, Joseph M. Demmon, and indorsed by the other defendant, Charles Demmon.

The defendants offered to prove the following facts as a defence to the action. That in 1839 the Bank of Lyons was

owner of a large amount of its own stock, which, although the property of the bank, stood in the names of the president and cashier; that the stock has greatly depreciated and is of little or no value.    That the defendant (J. M. D.) was not then a stockholder; that he was applied to by the president and cashier, and solicited to take sufficient of said stock to enable him to become a director, and leave his note therefor at the bank, with an understanding that whenever he might desire to do so, he could return the stock and take up his note, the object being to have the aid of said J. M. D. in managing the affairs of the bank.    That he acceded to said proposition, and took ten shares of the stock, nominally one hundred dollars each, for which he left his note at the bank.    This note was renewed from time to time until 1840, when a new president and cashier were appointed, and said J. M. D. was requested to continue the arrangement and remain a director; and it was then agreed that the stock he held should be returned to the bank and his note, then with the bank, be canceled, and that ten other shares of the stock of said bank, owned by it, should be issued or assigned to him, and for which he should give a new note; and that whenever he might elect so to do, he should have the right to return the stock to the bank and take up said note without any other payment.    That the first ten shares of stock were accordingly returned to the bank, and the note, then held by the bank, given up to the defendant (J. M. D.), and he received other ten shares of the stock and gave the note now in suit; the whole arrangement being made for the benefit and at the request of the bank.    That this arrangement remained in full force until September, 1842, when said J. M. D. returned the last mentioned stock to the bank, which the cashier received of him, and said cashier was thereupon desired to return the note to said J. M. D. according to said arrangement.    That he agreed to do so, saying it might be considered as done; that he was then too much engaged to look up the note, but he would do so ·in a short time and return it to said J. M. D. the next time he called.    That things remained in ·this situation until the bank was enjoined, which was a few days thereafter, and in

this manner the note ultimately came into the hands of the receiver.

This, as I read the case, is, in substance, what was offered to be proved by way of defence. As I understand it, the offer was to show that such were the arrangements between the bank and the defendant (J. M. D.), and not merely between the latter and some of the officers of the bank, as individuals. Individually and acting for themselves, they could have no right to dispose of the property of the bank in any manner. But according to the statement which was offered to be proved, the defendant (J. M. D.) received ten shares of stock and gave the note in suit under a particular arrangement, by which it was agreed that the stock would, at any time, be taken by the bank, in satisfaction of the note. If that arrangement was made by individuals for themselves, and without authority from the bank, the latter was in no sense bound by what had been done, and might have taken its remedy against all parties who concurred in this unauthorized use of its property. If on the other hand, instead of repudiating the transaction, the bank sought to recover on the note thus given for the stock, it affirmed what had been done, and must abide by the entire arrangement as if originally made by its express authority. The case, certainly, does not contain a very perspicuous statement of what was offered, done or proved, and the trial seems to have gone on in a zig-zag way, some evidence being admitted, and some of the same character, as far as I can perceive, rejected. But as I interpret the case the offer was to show, in effect, that these successive arrangements were between the bank and J. M. D., and that the stock was finally returned to and accepted by the bank through the agency of its cashier.

The arrangement of 1839, as offered to be proved, seems to be, intrinsically, of no consequence in this case, except as laying the foundation for what occurred when the note in suit was given. The stock, received by J. M. D. in 1839, was returned in 1840, and his note, which the bank had held for it, was given up to him. That arrangement was thus closed, but, according to the offer, a new one took its place.

This cause must turn upon the true character of the last arrangement and what was done under it.

It is important here to mark the distinction between an offer to prove a mere verbal agreement, made at the time of giving a promissory note, by which the payee stipulates to receive payment at a different time or in a different manner from that specified in the note, and such an agreement when followed by a complete execution and performance. The former alone amounts to nothing; the latter, in my judgment, constitutes a good defence to an action on the note. Few principles of law are more firmly settled, or applied with more uniformity and steadiness, than that which precludes the introduction of parol evidence to contradict, change or vary a written instrument. It can not be shown in this way, that a note, or other obligation was to be paid to a different person, or at another time, or in another manner than that expressed in the agreement. The principle is familiar and hardly requires an authority, but it will be found fully developed in 1 Phil. Ev., 531, part 2, chap. X. And see Cowen and Hill's notes on the chapter.

By the note in suit the defendants were holden for the payment of one thousand dollars and interest, in money, at a particular time and place, but by the parol, collateral agreement, as set up, the party to whom the note was given engaged to accept the ten shares of nearly worthless stock, at any time, in satisfaction of the note. As an agreement thus to control the note, I am persuaded that the law would not allow it to be proved ; to do so, would be a plain violation of the rule I have stated.

But, although the law will not permit a written agreement to be avoided or changed by a cotemporaneous or prior parol collateral engagement, it does not make it illegal or immoral for the party who made it, to live up to such an agreement. The rule of evidence exists for his protection; that written engagements in his favor should not be destroyed by what rests in "slippery memory"; but if he, like an honest man, acknowledges his engagement and accepts satisfaction according to it, that becomes binding and conclusive upon him, and he can not afterwards recede from what had

been agreed, and what was thus done and accepted in execution of the agreement. It is a good accord and satisfaction, and the obligation upon which satisfaction was thus received is thereby extinguished. It would be grossly dishonest if it were not so. Is the party to keep what he has thus received as satisfaction, and collect the money also? What he has received is his; what shall he do with it? If he offers to return it, the one to whom the offer is made may refuse, and he is not bound to take it back. It was delivered and accepted in satisfaction of a demand, and that makes an end of the matter; it is too late, afterwards, to pretend that the debt, on which property had thus been received, is any longer in existence. (Cowen and Hill's note 976 to 1 Phil. Ev., p. 1461; *Hagood* v. *Swords*, 2 Bail. R., 305; *Farnham* v. *Ingham*, 5 Vermont R., 514; *Bradley* v. *Bentley*, 8 id., 243; *Crosman* v. *Fuller*, 17 Rich., 171; *Eaves* v. *Henderson*, 27 Wend., 191.

It will be necessary, in this case, therefore to ascertain what the agreement was upon which the note was given, and how far, if at all, it was performed. These are questions for the jury, and upon which I shall not venture a conjecture. They must be determined, like other disputed facts, by the proper tribunal, a jury, after hearing all the competent evidence offered for their consideration. The testimony which was proposed to be given by the witness, Taft, was competent, and should have been received. It was of the same character and tended to the same result, with that of the witness, Patchin, and upon what views of the case the latter was received and the former rejected, I certainly do not perceive.

Some embarrassment seems to have arisen on the trial, from the supposition that the bank could only be bound by what might appear in the formal resolutions of the board of directors. But this is incorrect; a corporation may act by its authorized agents, and is bound by their acts, as an individual would be. No formal resolution appointing the agent, or defining his powers, is required. A contract may be implied against a corporation, as against an individual; it may affirm the acts of an assumed agent, and thus become

bound by them; and in short, within in its corporate power, it may be bound in the same way, and its engagements may be proved in much the same manner, as those of an individual may be. (*Commercial Bank of Buffalo* v. *Kortwright*, 22 Wend., 348; Same Case, 20 *id.*, 91; *Perkins* v. *The Wash. Ins. Co.*, 4 Cow., 645; 2 Kent's Comm., 5th ed., 288 to 292; Angel and Ames on Corp., 172, § 7; *id.*, 175, § 8, 2d ed.)

If this note was given upon such an arrangement, and for the purpose stated on the part of the defendants, I do not see that it was a fraud upon the stockholders or the public, or in violation of any principle of the common or statute law. Nor is it readily perceived that the plaintiff would be the better off by showing that it was given upon a fraudulent arrangement between officers of the bank and the defendant (J. M. D.). A corporation may in many cases repudiate and disaffirm the frauds of its agents and officers, and obtain redress accordingly; but this action is in affirmance of the contract, whatever it was, on which the note was given, and if that contract was fraudulent the law would not lend its aid to carry it into effect, except in favor of a bona fide holder of the note who received it without notice, for value, and before due. As to such a party the fraudulent inception of a negotiable note can not be shown, in order to defeat a recovery, except where the statute makes it absolutely void. But it is unnecessary to dwell on views of this description; the case may not require their discussion, and until we know better what the facts were, suggestions as to the law of the case could only be hypothetical.

New trial ordered.